

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED
THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 31, 2023**

**United States Bankruptcy Judge**

___

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 22-42299-mxm-7 |
| ROBERT TYE COURNOYER, | § | |
| | § | CHAPTER 7 |
| DEBTOR. | § | |
| | § | |

| | | |
|---|---|---|
| BLU HAWK ENTERPRISES, INC., | § | |
| | § | |
|    PLAINTIFFS, | § | |
| | § | ADVERSARY NO. 23-04006-mxm |
| V. | § | |
| | § | |
| ROBERT TYE COURNOYER, | § | |
| | § | |
|    DEFENDANT. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
*[Relating to Adv. ECF No. 1]*

The Court held a trial to determine whether Mr. Robert Tye Cournoyer ("***Mr. Cournoyer***") is entitled to a discharge under 11 U.S.C. § 727.

The Court has reviewed, analyzed, and considered the Complaint[1] filed by Blu Hawk Enterprises Inc., ("**Blu Hawk**"), Mr. Cournoyer's Answer,[2] the *Joint Pretrial Order*,[3] testimony of Mr. Cournoyer, exhibits admitted into evidence, and the arguments of counsel. After due deliberation, the Court makes the following findings of fact and conclusions of law.[4]

## I    JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This proceeding is a core proceeding over which the Court has statutory and constitutional authority to enter final orders and judgments pursuant to 28 U.S.C. § 157(b)(2)(J). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## II.    BACKGROUND FACTS

Mr. Cournoyer is the Debtor in the above-referenced bankruptcy case and the Defendant in this Adversary Proceeding.

Mr. Cournoyer testified credibly that for several years prior to 2020, he was the owner and managing consultant with RS Group Holding, LLC and Green Equity Group,[5] which assisted clients with marketing their products.[6] During those years, Mr. Cournoyer earned between $180,000 to $240,000 in any given year.[7]

---

[1] *Complaint Objecting to Discharge*, Adv. ECF No. 1 (the "**Complaint**").
[2] *Defendant Robert Tye Cournoyer's Answer to Plaintiff's Complaint Objecting to Dischargeability of Indebtedness Under 11 U.S.C. § 727 et. seq.*, Adv. ECF No. 16 (the "**Answer**").
[3] Adv. ECF No. 27.
[4] *See* Rule 52 FED. R. CIV. P. as incorporated by FED. R. BANKR. P. 7052.
[5] Ex. B, pg. 11.
[6] Testimony of Mr. Cournoyer, TR at 10:21:35 – 10:23:24.
[7] Testimony of Mr. Cournoyer, TR at 10:30:32 – 10:31:05.

In early 2020, in large part due to the COVID pandemic, both his consulting businesses suffered and eventually went out of business.[8] Therefore, to earn income, Mr. Cournoyer turned to gambling as his primary source of income to "carry me through in tough times."[9] Mr. Cournoyer's uncontroverted testimony was that from 2020 until he filed his bankruptcy case, he earned approximately $35,000 to $50,000 in gambling revenue each year.[10]

For years prior to his bankruptcy filing, Mr. Cournoyer did not have a personal bank account in his own name, rather, he used a JPMorgan Chase Bank account (in the name of RS Group Holding, LLC) and Wells Fargo bank account (in the name of Green Equity Group) to pay his personal and household living expenses until each of those accounts were closed.[11] After those accounts were closed, Mr. Cournoyer's uncontroverted testimony was that he tried unsuccessfully to open a bank account in his own name. Years earlier, Mr. Cournoyer had an issue with NSF checks, which caused his name to be placed on watch list preventing him from being able to open a checking account in his own name.[12]

Mr. Cournoyer is not married, and until recently, he and his non-filing girlfriend, Ms. Sarah Gurren ("**Ms. Gurren**") had been living together since 2019.[13] Mr. Cournoyer has two children from a prior marriage and Mr. Cournoyer and Ms. Gurren also have a child together. While living together, Mr. Cournoyer and Ms. Gurren leased a home in Southlake, Texas. The *Residential Lease*[14] was in Mr. Cournoyer's name only and was for the original lease term from May 15, 2020,

---

[8] *Id.*
[9] Testimony of Mr. Cournoyer, TR at 10:28:35 – 10:28:33.
[10] Testimony of Mr. Cournoyer, TR at 10:30:05 – 10:30:30; *see also* Ex. F.
[11] Testimony of Mr. Cournoyer, TR at 10:26:04 – 10:27:50.
[12] Testimony of Mr. Cournoyer, TR at 10:27:54 – 10:28:33.
[13] Testimony of Mr. Cournoyer 10:31:03-10:31:10; 10:56:05 – 10:56:33.
[14] Ex. 6.

through May 15, 2022, with monthly rental payments of $6,800 per month. When Mr. Cournoyer signed the Residential Lease, he paid the Landlord a deposit of $13,600—the equivalent of two months' rent under the Residential Lease (the "**Lease Deposit**").[15]

After the original term of the Residential Lease expired, Mr. Cournoyer executed an *Extension of Residential Lease*[16] effective May 16, 2022, through May 16, 2023, with an increase in monthly rental payments to $7,160. The uncontroverted evidence further established that, when Mr. Cournoyer and the Landlord extended the lease, the Landlord returned the Lease Deposit to Mr. Cournoyer in the form of a credit against the first two months of the extended lease term.[17] Consequently, Mr. Cournoyer was not paid cash for the return of the Lease Deposit.

Mr. Cournoyer testified credibly that, prior to his businesses failing, both Mr. Cournoyer and Ms. Gurren would each pay various household living expenses out of Mr. Cournoyer's business bank accounts and Ms. Gurren's personal bank account. But, when Mr. Cournoyer's businesses failed and his business bank accounts were closed, most of their household living expenses were paid out of Ms. Gurren's personal bank account.[18]

Due to Mr. Cournoyer not having a bank account in his own name, he used his gambling winnings (when that occurred) to pay cash for some living expenses; however, he generally gave his winnings to Ms. Gurren to deposit the funds into her bank account in order to pay for their shared household living expenses.[19] Additionally, because Mr. Cournoyer's gambling income was sporadic and substantially reduced, Ms. Gurren began paying a larger share of the household living

---

[15] Testimony of Mr. Cournoyer, TR 10:37:10 – 10:37:30.
[16] Ex. H.
[17] Testimony of Mr. Cournoyer, TR at 10:37:10 – 10:38:47.
[18] Testimony of Mr. Cournoyer, TR at 10:31:10 – 10:33:29; 10:56:50 – 10:59:20.
[19] *Id.*

expenses from her income (approximately $82,000 annually) and from inheritances Ms. Gurren received from her father and step-father as well as drawing from her 401K.[20]

On September 30, 2022, Mr. Cournoyer filed his *Voluntary Petition*[21] initiating the above referenced bankruptcy case as a *pro se* filer. The Voluntary Petition specifically cautioned Mr. Cournoyer about the risks of filing bankruptcy without the assistance and advise of an attorney.[22]

While acting *pro se*, Mr. Cournoyer signed the required verifications and then filed his initial bankruptcy Schedules and Statement of Financial Affairs.[23] Mr. Cournoyer testified credibly that he filled out and filed his original Schedules and Statement of Financial Affairs in good faith and with the intent to complete the paperwork correctly.

After being served with a Motion for a 2004 examination,[24] Mr. Cournoyer realized that he needed the assistance of counsel, so he engaged counsel to represent him in his underlying bankruptcy case[25] and, thereafter, in this Adversary Proceeding.

On January 13, 2023, and with the assistance of counsel, Mr. Cournoyer filed his Amended Schedules and Amended Statement of Financial Affairs to correct errors and omissions contained in his original Schedules and Statement of Financial Affairs.[26]

On January 26, 2023, Blu Hawk filed the Complaint against Mr. Cournoyer.

---

[20] *Id.*; *see also* Testimony of Mr. Cournoyer 11:02:40 – 11:03:07.
[21] Bkr. ECF No. 1.
[22] Bkr. ECF No. 1, pg. 9.
[23] *See* Ex. 1; *see also* Bkr. ECF No. 1.
[24] *Motion for Bankruptcy Rule 2004 Examination and Production of Documents*, Bkr. ECF. No. 29 (the "**Motion**").
[25] *See* Bkr. ECF No. 33.
[26] *See* Exs. 2–4; *see also* Bkr. ECF No. 44, 45, and 46.

### III.    ANALYSIS

Within the Complaint, Blu Hawk asserts that Mr. Cournoyer's discharge should denied based on three independent counts—11 U.S.C. § 727(a)(2), (4), and/or (5).[27] The Court will address each Count, in turn.

### A.    Count One: 11 U.S.C. § 727(a)(2)

Blu Hawk contends that Mr. Cournoyer's discharge should be denied under § 727(a)(2), which provides, in pertinent part:

> (a) The Court shall grant the debtor a discharge, unless
>
> . . .
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>
> (A) property of the debtor, within one year before the date of the filing of the petition.[28]

A claim under § 727(a)(2) has four elements: "(1) a transfer of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor."[29] Blu Hawk has the burden of proof for each of the four elements.[30] "Evidence of *actual intent* to defraud creditors is required to support a finding sufficient to deny a discharge."[31] Actual intent may also be inferred through "badges of fraud" circumstantial

---

[27] Adv. ECF No. 1; *see also* the *Joint Pre-Trial Order*, Adv. ECF No. 27.
[28] 11 U.S.C. § 727(a)(2).
[29] *Robertson v. Dennis* (*In re Dennis*), 330 F.3d 696, 701 (5th Cir. 2003).
[30] *Pavy v. Chastant* (*In re Chastant*), 873 F.2d 89, 90–91 (5th Cir. 1989).
[31] *In re Chastant*, 873 F.2d at 91 (citing *First Texas Sav. Ass'n v. Reed* (*In re Reed*), 700 F.2d 986, 991 (5th Cir. 1983)).

evidence.[32] Additionally, the Fifth Circuit has identified several additional factors that tend to prove actual intent to defraud:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.[33]

Although § 727(a)(2) does not contain a materiality component *per se*, a small value of affected property strongly suggests a lack of requisite intent.[34]

In support of its § 727(a)(2) cause of action, Blu Hawk contends that Mr. Cournoyer fraudulently transferred his gambling income to Ms. Gurren with the intent to hinder, delay, and/or defraud his creditors.[35] Blu Hawk contends that Mr. Cournoyer's fraudulent intent is established by Mr. Cournoyer's failure to disclose his relationship with Ms. Gurren in his bankruptcy filings. Specifically, Blu Hawk asserts that Mr. Cournoyer failed to disclose Ms. Gurren (and her income) in *Schedule I*, and that Mr. Cournoyer only disclosed his eighteen-year-old daughter and twenty-year-old son in *Schedule J*.[36]

Mr. Cournoyer testified credibly that he, in good faith, completed his Schedules and Statements of Financial Affairs and that he did not understand or believe that Ms. Gurren and her

---

[32] *In re Dennis*, 330 F.3d at 701–02.; *see also Chastant*, 873 F.2d at 91.

[33] *In re Dennis*, 330 F.3d at 701–02; *see also Matter of Chastant*, 873 F.2d at 91 (5th Cir. 1989) (quoting *Womble v. Pher Partners (In re Womble)*, 289 B.R. 836, 855 (Bankr. N.D. Tex. 2003) (citing *Moreno v. Ashworth (In re Moreno)*, 892 F.2d 417, 420 (5th Cir. 1990)).

[34] *Id.* at 702.

[35] Adv. ECF No. 1 at ¶ 44.

[36] Ex. 1 at *Schedules I* and *J*.

7

income were required to be disclosed on Schedule I since she was not his "spouse." Additionally, Mr. Cournoyer testified, credibly, that he had no intent to hinder, delay, or defraud his creditors when he and Ms. Gurren deposited his gambling income into Ms. Gurren's personal bank account.

The Court finds and concludes that, based on the credible testimony of Mr. Cournoyer and the other credible evidence in the record, Mr. Cournoyer did not intend to hinder, delay, or defraud his creditors by having his gambling winnings deposited into Ms. Gurren's personal bank account from which they paid their reasonable living expenses. Additionally, there is no other credible evidence in the record to suggest that Mr. Cournoyer intended to hinder, delay, or defraud his creditors in violation of § 727(a)(2). Consequently, Blu Hawk failed to satisfy its burden to prove the required elements to deny Mr. Cournoyer's discharge under § 727(a)(2). Therefore, Count One of the Complaint seeking to deny Mr. Cournoyer's discharge under § 727(a)(2), is **_DENIED_** and **_DISMISSED._**

**B.     Count Two: 11 U.S.C. § 727(a)(4)**

Blu Hawk contends that Mr. Cournoyer's discharge should be denied under § 727(a)(4), which provides, in pertinent part:

> (a)    The Court shall grant the debtor a discharge, unless
>
> . . .
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) made a false oath or account.[37]

Under § 727(a)(4), Blu Hawk has the burden to establish that (i) Mr. Cournoyer made a statement under oath; (ii) the statement was false; (iii) Mr. Cournoyer knew the statement was

---

[37] 11 U.S.C. § 727(a)(5).

8

false; (iv) Mr. Cournoyer made the statement with fraudulent intent; and (v) the statement must be material to his business transactions or estate or concern the discovery of assets, business dealings, or the existence and disposition of his property.[38]

The requirement element of fraudulent intent under § 727(a)(4) is actual fraud, which may be established "by showing either actual intent to deceive or a reckless indifference for the truth."[39] In addition, the false oath must be material and bear "a relationship to the [debtor]'s business transactions or estate, or [concern] the discovery of assets, business dealings, or the existence and disposition of his property."[40] Lastly, "a discharge cannot be denied when items are omitted from schedules by honest mistake."[41]

In support of Count Two, Blu Hawk contends that (i) Mr. Cournoyer's original and amended Schedules and Statements of Financial Affairs were signed under oath, (ii) several statements contained in the original and amended Schedules and Statements of Financial Affairs are false, (iii) Mr. Cournoyer knew the statements were false, (iv) Mr. Cournoyer made the statements with fraudulent intent, and (v) the false statements are material in violation of § 727(a)(4).

Specifically, Blu Hawk contends that Mr. Cournoyer's original and amended Schedules and Statements of Financial Affairs contain the following false oaths:

- Mr. Cournoyer failed to disclose and list (i) Ms. Gurren as an unsecured creditor in Schedule E/F, (ii) Ms. Gurren's income in Schedule I, or (iii) Ms. Gurren's share of the expenses in Schedule J;

---

[38] *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992); *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001).
[39] *Cadle Company v. Mitchell (In re Mitchell)*, 102 F. App'x 860, 862 (5th Cir. 2004).
[40] *In re Beaubouef*, 966 F.2d at 178.
[41] *Id.*

- Mr. Cournoyer failed to properly disclose the Residential Lease in Schedule G;

- Mr. Cournoyer failed to list the IRS as creditor in his Schedules;

- Mr. Cournoyer failed to list the lease of his Jaguar automobile in Schedule G; and

- Mr. Cournoyer failed to list his student loan debt in his Schedules.

The Court will address each of Blu Hawk's contentions, in turn.

    1. ***Failure to disclose (i) Ms. Gurren as an unsecured creditor in Schedule E/F, (ii) Ms. Gurren's income in Schedule I, or (iii) Ms. Gurren's share of the expenses in Schedule J***

Mr. Cournoyer credibly testified that he and Ms. Gurren lived as a family unit, that they paid household bills as a family unit, and that neither he nor Ms. Gurren ever considered that they were creditors of one another.[42] The uncontroverted and credible testimony of Mr. Cournoyer was that Ms. Gurren was not and is not an unsecured creditor of Mr. Cournoyer. Rather, they shared their income like any typical family unit taking care of their child, his other two children, and paying their household bills in the ordinary course of living. There is no credible evidence in the record to suggest that Ms. Gurren was a creditor of Mr. Cournoyer.

To the extent Ms. Gurren's income should have been included in Schedule I, the credible evidence established, and this Court finds, that Mr. Cournoyer did not intend to make a false statement or oath in his Schedules concerning Ms. Gurren's income.

To the extent Mr. Cournoyer's relationship with Ms. Gurren—in which they shared household bills and other expenses—should have been disclosed, the omission, if it was a required disclosure, was an honest mistake, and the omission was not material. Therefore, the Court finds

---

[42] Testimony of Mr. Cournoyer, TR at 10:31:10 – 10:33:29; 10:56:50 –10:59:20.

and concludes that Blu Hawk has failed to establish that Mr. Cournoyer knowingly and fraudulently made a false oath concerning these contentions.

### 2. Mr. Cournoyer failed to properly disclose the Residential Lease in Schedules G and J

Blu Hawk contends that Mr. Cournoyer made a knowing and fraudulent false oath in his Schedules and Amended Schedules concerning the Residential Lease. Mr. Cournoyer testified credibly that the Residential Lease was current when he filed his bankruptcy case and that he did not understand that the Residential Lease still needed to be listed in his Schedules. Additionally, because Ms. Gurren had been making the Residential Lease payments at the time of his bankruptcy filing, he did not list the monthly lease payment in Schedule J. But, in response to question 24 in Schedule J, which asks "[d]o you expect an increase or decrease in your expenses within the year after you file this form?" Mr. Cournoyer answered, "I expect to pay rent in 2023."[43]

Although the Residential Lease should have been listed on Schedule G and the monthly payment included on Schedule J, the credible evidence established that these omissions by Mr. Cournoyer were honest mistakes and that he did not knowingly and fraudulently make a false oath when he signed and filed his Schedules. Consequently, there is no credible evidence in the record to establish that Mr. Cournoyer knowingly and fraudulently made a false oath concerning the the omission of the Residential Lease on Schedules G and J. Therefore, the Court finds and concludes that Blu Hawk has failed to satisfy its burden under § 727(a)(4) concerning the Residential Lease.

### 3. Failure to list the IRS as a Creditor in his Schedules

Blu Hawk contends that Mr. Cournoyer made a knowing and fraudulent false oath in his Schedules and Amended Schedules because he failed to list the Internal Revenue Service ("**IRS**")

---

[43] Ex. 1; *see also* Bkr. ECF No. 1.

11

as a creditor. Mr. Cournoyer testified credibly that when he filed his bankruptcy case in 2022, he had not filed his 2020 or 2021 tax returns and was not aware of any amounts owing to the IRS or any refunds that might be due from the IRS.[44] Mr. Cournoyer has now filed his 2020 Federal Income Tax Return (reflecting an amount due to the IRS of $4,400) and his 2021 Federal Income Tax Returns (reflecting a refund due from the IRS in the amount of $3,753).[45] But Mr. Cournoyer testified credibly that the IRS offset the $3,753 refund against the $4,400 amount due to the IRS.[46] Therefore, the IRS has a claim of less than $1000 in this case.

Although the IRS claim should have been listed on Schedule E/F as an unsecured creditor with a claim of less than $1,000, this omission by Mr. Cournoyer was an honest mistake. Consequently, there is no credible evidence in the record to establish that Mr. Cournoyer knowingly and fraudulently made a false oath concerning the omission of the IRS claim on Schedule E/F. Therefore, the Court finds and concludes that Blu Hawk has failed to satisfy its burden under § 727(a)(4) concerning the IRS claim issue.

### 4. *Failure to list the lease of his Jaguar automobile in Schedule G*

Blu Hawk contends that Mr. Cournoyer made a knowing and fraudulent false oath in his Schedules and Amended Schedules when he failed to list an automobile lease of a Jaguar automobile in Schedule G. Mr. Cournoyer testified credibly, however, that he did not realize that the Jaguar automobile lease should have been listed on Schedule G, but the Jaguar automobile lease was disclosed in Schedule A/B and the monthly payment for the automobile lease was included on line 17a of Schedule J.[47]

---

[44] Testimony of Mr. Cournoyer 10:42:15 –10:42:45.
[45] Ex. F.
[46] Testimony of Mr. Cournoyer 10:44:20 –10:45:24.
[47] Ex. 1; *see also* Bkr. ECF No. 1.

The Court finds and concludes that the omission of the Jaguar automobile lease on Schedule G was an honest mistake, and that Mr. Cournoyer did not knowingly and fraudulently make a false oath when he signed and filed his Schedules. Consequently, there is no credible evidence in the record to establish that Mr. Cournoyer knowingly and fraudulently made a false oath concerning the omission of the Jaguar automobile lease on Schedule G. Therefore, the Court finds and concludes that Blu Hawk has failed to satisfy its burden under § 727(a)(4) concerning the omission of the Jaguar automobile lease on Schedule G.

   5. *Failure to list Student Loan Debt*

Blu Hawk contends that Mr. Cournoyer made a knowing and fraudulent false oath in his Schedules and Amended Schedules when he failed to list his student loan debt in the approximate amount of $18,000. The evidence established that Mr. Cournoyer had incurred the outstanding student loan debt in or around 1989 when he attended the University of Florida.

Mr. Cournoyer testified credibly, however, that he did not remember nor realize he had any outstanding student loan debt when he filed his bankruptcy case.[48] Mr. Cournoyer had not received letters, statements, or phone calls about any outstanding student loan debt obligation in more than ten years. Nor did any outstanding student loan obligations appear in Mr. Cournoyer's credit reports from Credit Karma or credit reports run by his attorney. It was not until recently that Mr. Cournoyer discovered that he had any outstanding student loan debt. His discovery of his outstanding student loan debt came when Mr. Cournoyer agreed to act as a guarantor for his daughter when she recently applied for a college student loan. Her application was denied, however, because of Mr. Cournoyer's outstanding student loan debt dating back to 1989.

---

[48] Testimony of Mr. Cournoyer 10:52:28 –11:04:40.

The Court finds and concludes that the omission of the student loan debt on his Schedules was an honest mistake, and that Mr. Cournoyer did not knowingly and fraudulently make a false oath when he signed and filed his Schedules. Consequently, there is no credible evidence in the record to establish that Mr. Cournoyer knowingly and fraudulently made a false oath concerning the omission of the student loan debt. Therefore, the Court finds and concludes that Blu Hawk has failed to satisfy its burden under § 727(a)(4) concerning the omission of the student loan debt on his Schedules.

For all of the foregoing reasons, Blu Hawk failed to satisfy its burden to establish that Mr. Cournoyer made a knowingly or fraudulent false oath in his Schedules, Statement of Financial Affairs, Amended Schedules, or Amended Financial Affairs. Therefore, Count Two of the Complaint seeking to deny Mr. Cournoyer's discharge under § 727(a)(4), is **_DENIED_** and **_DISMISSED_**.

C.   **Count Three: 11 U.S.C. § 727(a)(5)**

Blu Hawk contends that Mr. Cournoyer's discharge should be denied under § 727(a)(5), which provides, in pertinent part:

> (a) The Court shall grant the debtor a discharge, unless
>
> . . .
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.[49]

---

[49] 11 U.S.C. § 727(a)(5).

Blu Hawk has the initial burden to establish, by a preponderance of the evidence,[50] that Mr. Cournoyer possessed substantial, identifiable assets that are now unavailable for distribution to creditors.[51] If Blu Hawk satisfies its initial burden that assets that once existed are now unavailable, then the burden will shift to Mr. Cournoyer to provide a satisfactory explanation of the disposition of any such assets.[52] What constitutes a "satisfactory" explanation for the reduction of assets has not been definitively defined, but a lack of wisdom in the debtor's expenditures, standing alone, is not grounds for denial of a discharge.[53]

The proper focus under § 727(a)(5) is on the credibility of the proffered explanation rather than the propriety of the disposition of the assets, and an explanation need not even be meritorious to be satisfactory.[54] The debtor's explanation, however, must consist of more than a vague, indefinite, and uncorroborated hodgepodge of financial transactions.[55] When substantial assets have disappeared from the estate, the debtor must produce supporting documentary evidence.[56]

Specifically, Blu Hawk contends that Mr. Cournoyer has failed to explain, satisfactorily, the disposition of (i) the Lease Deposit and (ii) his gambling income. The Court disagrees.

As previously detailed, when Mr. Cournoyer signed the Residential Lease, he paid the Landlord a deposit of $13,600—the equivalent of two months' rent under the Residential Lease.[57] After the original term of the Residential Lease expired, Mr. Cournoyer executed an *Extension of*

---

[50] *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *see also In re Beaubouef*, 966 F.2d at 178.
[51] *In re Chu*, 679 F. App'x 316, 319 (5th Cir. 2017).
[52] *Id.*
[53] *In re Dung Anh Phan*, 607 B.R. 598, 613 (Bankr. S.D. Tex. 2019).
[54] *In re Crumley*, 428 B.R. 349, 371 (Bankr. N.D. Tex. 2010).
[55] *In re Henley*, 480 B.R. 708, 787 (Bankr. S.D. Tex. 2012).
[56] *Id.* (citing *In re Chalik*, 748 F.2d 616, 619–20 (11th Cir. 1984)).
[57] Testimony of Mr. Cournoyer, TR 10:37:10 – 10:37:30.

*Residential Lease*[58] effective May 16, 2022, through May 16, 2023, with an increase in monthly rental payments to $7,160. The uncontroverted evidence further established that when Mr. Cournoyer and the Landlord extended the lease, the Landlord returned the Lease Deposit to Mr. Cournoyer in the form of a credit against the first two months of the extended lease term.[59] Consequently, Mr. Cournoyer was not paid cash for the return of the Lease Deposit. The Court finds and concludes that Mr. Cournoyer has provided a satisfactory explanation of the disposition of the Lease Deposit.

Likewise, as previously detailed, when Mr. Cournoyer's consulting companies went out of business in early 2020, he turned to gambling as his primary source of income. And because Mr. Cournoyer could not open a personal bank account in his own name, his gambling winnings were deposited into Ms. Gurren's bank account so they could then pay their household living expenses out of Ms. Gurren's personal bank account.[60] Additionally, because Mr. Cournoyer's gambling income was sporadic and substantially reduced, Ms. Gurren began paying a larger share of the household living expenses from her income (approximately $82,000 annually) and from inheritances Ms. Gurren received from her father and step-father as well as drawing from her 401K.[61] The Court finds and concludes that Mr. Cournoyer has provided a satisfactory explanation of the disposition of his gambling winnings.

The Court finds and concludes that Blu Hawk failed to satisfy its burden to establish that Mr. Cournoyer failed to explain satisfactorily any loss of assets or deficiency of assets. Therefore,

---

[58] Ex. H.
[59] Testimony of Mr. Cournoyer, TR at 10:37:10 – 10:38:47.
[60] *Id.*
[61] *Id.*; *see also* Testimony of Mr. Cournoyer 11:02:40 – 11:03:07.

Count Three of the Complaint seeking to deny Mr. Cournoyer's discharge under § 727(a)(5), is ***DENIED*** and ***DISMISSED.***

### IV.    CONCLUSION

For the forgoing reasons, the Court finds and concludes that Blu Hawk failed to satisfy its burden to establish that Mr. Cournoyer should be denied a discharge under § 727. Therefore, each of the claims and causes of action contained in Counts One, Two, and Three of the Complaint are ***DENIED*** and ***DISMISSED***.

The Court will enter a separate final judgment consistent with these Findings of Fact and Conclusions of Law.

**### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###**